United States District Court
for the
Southern District of New York

| | | |
|---|---|---|
| FRANK OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No: 7:13-cv-5948 (VB) |
| | ) | |
| TEXTRON FINANCIAL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

Plaintiff for his amended complaint alleges:

1.      On August 13, 2013, Plaintiff commenced an action, Index No. 2013-1993, in the Supreme Court of the State of New York, County of Sullivan. The action was removed by Notice of Removal dated August 22, 2013 and filed on August 22, 2013 pursuant to 28 U.S.C. §1446(b).

2.      This Court has original jurisdiction over this civil action: (1) Plaintiff and Defendant are "citizens of different States," and (2) the amount in controversy "exceeds the sum or value of $75,000.00, exclusive of interest and costs." 28 U.S.C. §1332(a). This Court is the district court "for the district and division embracing the place where such action is pending," and defendant is not a citizen of the State in which this action was brought. 28 U.S.C. §1441.

3.      Frank Owens resides at 4585 State Route 97, Narrowsburg, New York, 12764.

4.      Textron Financial Corporation is a Delaware corporation with principal place of business at 40 Westminster Street, Providence, Rhode Island 02903 and with an additional office for the conduct of business at 11575 Great Oaks Way, Suite 210, Alpharetta, GA 30022.

1

5.      Textron Financial Corporation is a highly sophisticated money lender skilled in the business of making high interest loans to high risk borrowers, a business usually not engaged in by conventional national and state banks.

6.      Gaffken & Barriger Fund, LLC is a New York limited liability company with principal place of business at 198 Bridgeville Road, Monticello, New York  12701.

7.      Lloyd Vernon Barriger presently resides at 73 Clover Hill Road, Damascus, Pennsylvania 18415-3534, previously had a principal place of business at 198 Bridgeville Road, Monticello, New York 12701, and is about to go to jail.

8.      Lloyd Vernon Barriger was an unregistered investment advisor, conducting business at 198 Bridgeville Road, Monticello, New York 12701 and was the President and Chief Executive Officer of Gaffken & Barriger Fund, LLC.

9.      This is an action by a crime victim to recover the proceeds of the crime from the beneficiary and recipient of the proceeds of that crime.

10.     Lloyd Vernon Barriger and Gaffken & Barriger Fund, LLC perpetrated the crime.

11.     Frank Owens was the victim of the crime.

12.     Textron Financial Corporation is the direct beneficiary of the crime and received the proceeds.

13.     The sole purpose of the crime was specifically to obtain money to give to Textron Financial Corporation.

14.     The crime proceeds were reserved to Textron Financial Corporation and not used or absorbed in the Ponzi Scheme hereinafter referred to.

2

15.    Gaffken & Barriger Fund, LLC had brief possession of the proceeds of the crime by virtue of a wire pass-through occurring simultaneously with or minutes after the commission of the crime itself.

16.    A criminal who profits by and has possession of the proceeds of his or her crime does not obtain title to those proceeds of the crime.

17.    By the commission of the crime, Lloyd Vernon Barriger and Gaffken & Barriger Fund, LLC stole Two Million ($2,000,000.00) Dollars from Frank Owens and immediately handed it over to Textron Financial Corporation through intra-bank transfer and wire transfer as hereinafter alleged.

18.    Gaffken & Barriger Fund, LLC is now in the hands of a receiver appointed by Supreme Court, Sullivan County, by order dated August 10, 2011 and entered on August 12, 2011.

19.    Textron Financial Corporation and Gaffken & Barriger Fund, LLC are parties to a Loan and Security Agreement dated as of January 25, 2006 (as amended, restated or otherwise modified from time to time) pursuant to which Textron Financial Corporation has made certain loans and other financial accommodations to Gaffken & Barriger Fund, LLC.

20.    The loans made by Textron Financial Corporation to Gaffken & Barriger Fund, LLC are high interest loans with high interest rates and high penalties for default.

21.    Prior to receivership, Gaffken & Barriger Fund, LLC was generally engaged in a business of holding primarily real estate collateralized commercial mortgage loans, other mortgages, real estate related and non-real estate assets, and making loans at high interest rates to high risk borrowers.

22.    Gaffken & Barriger Fund, LLC raised capital for its operation through sales of

securities to public investors and private borrowing.

23.    Under provisions contained in the Loan and Security Agreement dated as of

January 25, 2006 as alleged in paragraph "19", supra, Textron Financial Corporation had the right

to review and audit and did review and audit the financial records and books maintained by Gaffken

& Barriger Fund, LLC.

24.    The underlying Loan and Security Agreement gave Textron Financial Corporation

all of the tools with which it could thoroughly understand the financial and illegal activities of the

Gaffken & Barriger Fund, LLC and its President Lloyd Vernon Barriger and it did employ those

tools.

25.    The Loan and Security Agreement between Textron Financial Corporation and

Gaffken & Barriger Fund, LLC, dated January 25, 2006, required:

>          "6.1    Financial Statements.    Borrower shall deliver to Lender,
> within one hundred twenty (120) days following the close of each
> Fiscal Year thereafter, Borrower's audited financial statements,
> certified by a recognized firm of independent certified public
> accountants acceptable to Lender as having been prepared in
> accordance with GAAP and as presenting fairly the financial
> condition of Borrower as of the date thereof and for the period then
> ended, and including a management letter to Borrower from such
> accounts.  Borrower shall deliver to Lender such other financial
> information as Lender shall reasonably request, including, (i) within
> thirty (30) days after the close of each month, reasonably detailed
> monthly and fiscal year-to-date financial statements, including
> income statement, balance sheet, and statement of cash flow, prepared
> in accordance with GAAP (subject to the absence of notes and to
> annual audit adjustment), certified by the chief executive officer or
> chief financial officer or other authorized individual of Borrower as
> presenting fairly the financial condition of Borrower, which, for the
> end of each month, shall also include a Covenant Compliance
> Certificate, setting forth a calculation of the financial covenants

4

described in Section 7.6 below, and the status of all other monetary covenants set forth in this Agreement, and (ii) at least sixty (60) days prior to the end of Borrower's Fiscal Year thereafter, an annual operating budget, prepared in accordance with GAAP, showing a projected income statement, balance sheet and cash flows as of each Fiscal Quarter end of the forthcoming Fiscal Year."

26.     The Loan and Security Agreement between Textron Financial Corporation and

Gaffken & Barriger Fund, LLC, dated January 25, 2006, required:

"6.2    Books and Records.    Borrower shall keep accurate and complete records, including accurate and complete books and records of the Collateral, maintained in accordance with GAAP as acknowledged by Lender, including without limitation observing reasonable practices for monitoring and managing Borrower's loans to Clients, and shall permit Lender to: (a) visit Borrower's business locations during normal business hours upon two (2) days' prior notice, but without notice at any time during the existence of an Event of Default; (b) inspect, audit and make extracts from or copies of Borrower's books, records, journals, receipts, computer tapes and disks; (c) to accompany Borrower on its field examinations with respect to any Client; (d) to inspect all records available to Borrower including without limitation field examination reports, borrowing base certificates, appraisals, credit reports, credit approvals, and financial statements with respect to any Client and to examine and make copies of any such records; (e) to inspect all records available to Borrower from any credit reporting service, bureau or similar service with respect to any Client and to examine and make copies of any such records; provided that Borrower makes no representation to Lender regarding the accuracy or veracity of such reports; and (f) to attend, for the purpose of monitoring only and not for participating in, any and all meetings of Borrower the purpose of which, in whole or part, is to discuss the status of any and all Client Loans that are or may be delinquent or otherwise in default.    All governmental authorities are authorized to furnish Lender with copies of reports of examinations of Borrower made by such parties.    Banks, Clients and other third parties (without waiving any attorney-client privilege) with whom Borrower has contractual relationships pertaining to the Collateral or the Loan Documents, are authorized to furnish Lender with copies of such contracts and related materials.    Lender is authorized, in its own name or any other name, to communicate with Clients in order to verify the existence, amount and terms of any

Receivable.  Lender may exhibit a copy of this Agreement to any party with whom Lender contacts pursuant to this Section 6.2 and such party shall be entitled to rely on the provisions hereof in providing access or information to Lender as Provided herein."

27.     The Loan and Security Agreement between Textron Financial Corporation and

Gaffken & Barriger Fund, LLC, dated January 25, 2006, required:

> "6.3     <u>Additional Documentation</u>.    Borrower shall execute and deliver to Lender all additional documents that Lender may, from time to time, reasonably determine are necessary or appropriate to evidence the Loans or to continue or perfect Lender's Security Interest in the Collateral."

28.     The Loan and Security Agreement between Textron Financial Corporation and

Gaffken & Barriger Fund, LLC, dated January 25, 2006, required:

> "6.7     <u>Reporting as to Revenues and Receivables.</u>
>
> (a)      With such frequency as Lender shall direct, Borrower shall shall deliver to Lender such information as Lender shall request with respect to the Revenues, Receivables and Inventory, including, but not limited to:
>
> (i)      no later than 1:00 p.m., East Coast time on the first to occur of (A) the day on which Borrower requests a Revolving Loan Advance or (B) Wednesday of each week, a weekly Borrowing Base Certificate based on the Receivables as of the end of the preceding day, together with a detailed summary of sources of all of the Revenues and credits and collections associated with Receivables.
>
> (ii)      no later than the fifteenth (15th) day of each month, a monthly Borrowing Base Certificate based on the Receivables as of the end of the preceding month, and detailed reports and schedules showing the aging of Receivables and Borrower's accounts payable as of the end of the preceding month;
>
> (iii)      no later than 1:00 p.m., East Coat time on Wednesday of each week (or more often as the Lender may request) daily sales and collections reporting as of the end of the preceding day, in form and substances acceptable to Lender; and

(iv)    no later than ten (10) days following Lender's request therefor, complete and updated list of Borrower's Clients, including the name, address and telephone number of each customer.

(h) [sic]   Borrower shall notify Lender promptly if:

(i)    Borrower or any Client enters into a long-term contract with the United States of America, and, if requested by Lender, Borrower shall execute and shall cause such Client to execute all instruments and take all steps necessary to insure that all amounts due and to become due under such long-term contract are property assigned to Lender pursuant to the Assignment of Claims Act of 1940 or otherwise;

(ii)    Borrower receives information with regard to any type or item of Collateral which might have in any way a Materially Adverse Effect on the value of the Collateral as a whole or the rights and remedies of Lender with respect thereto; and

(iii)    any accounts due and owing in which amounts in excess of $20,000 are in dispute by any single Client on an Eligible Receivable, and Borrower shall explain in detail the reason for the dispute, all claims related to the dispute, and the amount in controversy."

29.     The Loan and Security Agreement between Textron Financial Corporation and

Gaffken & Barriger Fund, LLC, dated January 25, 2006, required:

"6.13   Disclosure.   Promptly and in no event later than five (5) Business Days after obtaining knowledge thereof, Borrower shall (i) notify Lender if any written information, exhibit, or report furnished to Lender contained any untrue statement of a material fact or omitted to state any material fact necessary to make the statements contained therein not misleading in light of the circumstances in which made, and (ii) correct any defect or error that may be discovered therein or in any Loan Document or in the execution, acknowledgment, filing or recordation thereof."

30.     Textron Financial Corporation did, prior to April 18, 2007, and from time to time

thereafter, conduct a review and audit of the financial records and books maintained by Gaffken &

7

Barriger Fund, LLC, thereby becoming fully familiar with the financial condition of Gaffken & Barriger Fund, LLC , the condition of its distressed collateralized commercial mortgage loans and other mortgages, as well as making payments to existing investors from funds obtained from new investors, and the manner in which it was conducting business.

31.     Textron Financial Corporation knew or should have known that Gaffken & Barriger Fund, LLC was a criminal enterprise engaged in the operation of a Ponzi Scheme, making payments to existing investors from funds obtained from new investors and attracting new investors by manipulative and deceptive device.

32.     Textron Financial Corporation was aware of the nature of the business conducted by Gaffken & Barriger Fund, LLC, that it was insolvent at least as of April 18, 2007 or earlier, and that it continued its business while insolvent.

33.     Textron Financial Corporation knew that Gaffken & Barriger Fund, LLC guarantied a return of eight (8%) percent on investment for anyone investing in Gaffken & Barriger Fund, LLC and that any investment was returnable on demand.

34.     By reservation of rights letter dated April 18, 2007 from Textron Financial Corporation to Gaffken & Barriger Fund, LLC, Attention: Lloyd V. Barriger, Textron Financial Corporation, in addition to other things, declared:

> "Events of default have occurred and currently exist under the Agreement as a result of the Borrower's failure to comply with the maximum delinquent loan covenant set forth in Section 7.6(d) of the Agreement for the month ended March 31, 2007 (the foregoing defaults are collectively referred to herein as, the "Current Defaults")."

8

35.     By reason of the premises, Textron Financial Corporation knew or should have known that any payments made to it to cure its defaults were generated in the course of the Ponzi Scheme or obtained by Gaffken & Barriger Fund, LLC in its course of defrauding new investors and third parties like Frank Owens.

36.     From review and audit of Gaffken & Barriger Fund, LLC financial and internal books and records, Textron Financial Corporation knew that any payments made on account to cure "Current Defaults" or other defaults were the result of and generated by a "Ponzi Scheme" engaged in by Gaffken & Barriger Fund, LLC and Lloyd Vernon Barriger, individually, as President, and as Chief Executive Officer of Gaffken & Barriger Fund, LLC or generated through some other illegal or criminal activity or manipulative and deceptive device and contrivance.

37.     Textron Financial Corporation knew that any payments made to it on account by Gaffken & Barriger Fund, LLC could not come from earned income and profit of existing investment and that Gaffken & Barriger Fund, LLC was concealing its illegal business activities by accounting records intended to conceal and not kept in accordance with generally acceptable accounting principles.

38.     Textron Financial Corporation knew that any of the payments made to it from Gaffken & Barriger Fund, LLC to cure "Current Defaults" or any other defaults could not be made from current earned income and existing investment.

39.     Textron Financial Corporation knew that any payment made by Gaffken & Barriger Fund, LLC to cure "Current Defaults" or any other defaults had to come from monies received by Gaffken & Barriger Fund, LLC from new investors or lenders or other third parties such as Frank Owens.

9

40.     Textron Financial Corporation knew that Gaffken & Barriger Fund, LLC was unable to borrow from other factors and lenders because of its insolvent financial position and that applications for such borrowing from other factors or lenders had been denied.

41.     Knowing that Gaffken & Barriger Fund, LLC was insolvent, unable to pay investors from earned income, unable to pay investors from profits, unable to timely pay creditors, unable to timely pay Textron Financial Corporation, and unable to borrow, it did not declare a default which would have had the effect of closing down the Gaffken & Barriger Fund, LLC operations; and instead entered into forbearance agreements so that Gaffken & Barriger Fund, LLC would not be required to fully disclose its financial distress, could continue its illegal activities and fraudulently induce innocent third parties to lend, invest, and give it money, thereby aiding and abetting the criminal activities of Gaffken & Barriger Fund, LLC and Lloyd Vernon Barriger.

42.     Based upon obtaining money by false pretenses in violation of federal and state criminal statutes, Gaffken & Barriger Fund, LLC and Lloyd Vernon Barriger, as perpetrators, stole Two Million ($2,000,000.00) Dollars from Frank Owens, as victim, and the money was immediately wired to Textron Financial Corporation.

43.     The Two Million ($2,000,000.00) Dollars wired to Textron Financial Corporation constitutes proceeds of crime or crimes committed by Gaffken & Barriger Fund, LLC and Lloyd Vernon Barriger.

44.     The movement of the Two Million ($2,000,000.00) Dollars was orchestrated and carried out by Lloyd Vernon Barriger and another executive of Gaffken & Barriger Fund, LLC, Andrew McKean, on September 27, 2007 by intra-bank transfer at Catskill Hudson Bank, Monticello, New York 12701 from an attorney's escrow account held for the benefit of Frank Owens

10

to an account held for benefit of Gaffken & Barriger Fund, LLC and immediately wired by Gaffken & Barriger Fund, LLC to Textron Financial Corporation.

45.     On September 27, 2007, Gaffken & Barriger Fund, LLC was insolvent and unable to meet its obligations as they became due.

46.     Textron Financial Corporation is unjustly enriched by the receipt of Two Million ($2,000,000.00) Dollars proceeds of crime.

47.     Frank Owens is entitled to return of the Two Million ($2,000,000.00) Dollars proceeds of crime together with interest from September 27, 2007 and disgorge by Textron Financial Corporation.

48.     With regard to crimes alleged herein applicable to victim Frank Owens and other crimes applicable to old and new investors of Gaffken & Barriger Fund, LLC, by Grand Jury Indictment filed in the United State District Court, Southern District of New York on May 12, 2011, Lloyd Vernon Barriger was charged with conspiracy to commit mail fraud in violation of Title 18 United States Code Section 1341, Title 18 United States Code Section 1349, Title 15 United States Code, Sections 78(j)(b) and 78(ff), securities fraud in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18 United States Code, Section 2 and by Superseding Indictment dated February 26, 2013 as follows:

## COUNT ONE
### (Conspiracy to Commit Mail Fraud)

## COUNT TWO
### (Mail Fraud)

## COUNT THREE
### (Conspiracy to Commit Securities Fraud)

## COUNT FOUR
### (Securities Fraud)

49.     On July 26, 2013, Lloyd Vernon Barriger pleaded guilty to the charges listed

below:

| Number of Charges | Description of Charge(s) | Disposition |
|---|---|---|
| 1 | Conspiracy to commit offense or to defraud US | Guilty |
| 1 | Securities Violations | Guilty |
| 1 | Mail Fraud - Frauds and swindles | Guilty |
| 1 | Attempt and conspiracy fraud | Guilty |

and is awaiting sentencing presently scheduled for November 15, 2013 before Judge Cathy

Seibel of the United States District Court, Southern District of New York.

50.     The Two Million ($2,000,000.00) Dollars stolen from Frank Owens by Lloyd Vernon

Barriger and Gaffken & Barriger Fund, LLC was never commingled with other monies or funds of

Gaffken & Barriger Fund, LLC and is immediately traceable through the intra bank transfer and

immediate wire from the Catskill Hudson Bank to Textron Financial Corporation on September 27,

2007.

51.     At the close of banking business on September 26, 2007, the day before the transfer

of the Two Million ($2,000,000.00) Dollars to Textron Financial Corporation, the Gaffken &

Barriger Fund, LLC Catskill Hudson Bank Account Number: 1101012 had a balance of $116,667.12.

52.     On September 27, 2007, Baum Law Offices, LLP completed an intra-bank transfer

of Two Million ($2,000,000.00) Dollars, from its Catskill Hudson Bank special escrow Account

Number:  14103451 for Frank Owens, to Gaffken & Barriger Fund, LLC Catskill Hudson Bank Account Number: 1101012.

53.     On September 27, 2007, Gaffken & Barriger Fund, LLC wired Textron Financial Corporation $2,115,647.12, incurred a wire fee of $20.00,  and on the close of business on that day, Account Number: 1101012 had a balance of $1,000.00.  There were no intervening entries.

54.     The stolen Two Million ($2,000,000.00) Dollars is traceable from the time and point of theft directly into the Textron Financial Corporation account.

55.     The payment of Two Million ($2,000,000.00) Dollars was not made in the ordinary course of business.

56.     Textron Financial Corporation is not an innocent transferee without knowledge of the Gaffken & Barriger Fund, LLC criminal activity.

WHEREFORE, Plaintiff Frank Owens demands judgment against Defendant Textron Financial Corporation for compensatory damages in the amount of Two Million ($2,000,000.00) Dollars with interest from September 27, 2007, punitive damages in an amount to be determined, and legal fees in an amount to be determined, together with the costs and disbursements of the action.

Dated: October 18, 2013

BAUM LAW OFFICES, LLP

By:     Morton I. Baum, Esq. (MB 1674)
        *Attorneys for Plaintiff*
        428 Broadway
        P.O. Box 1260
        Monticello, New York 12701
        baumlawoffices@verizon.net
        (845) 791-1000

13

To:   GIBSON, DUNN & CRUTCHER, LLP
      Mitchell A. Karlan, Esq.
      *Attorneys for Defendant*
      200 Park Avenue
      New York, New York 10166-0193
      Telephone: (212) 351-4000
      Facsimile: (212) 351-4035
      mkarlan@gibsondunn.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a Jury Trial in accordance with Rule 38.

Dated: October 18, 2013

                                    BAUM LAW OFFICES, LLP

                              By:   Morton I. Baum, Esq. (MB 1674)
                                    *Attorneys for Plaintiff*
                                    428 Broadway
                                    P.O. Box 1260
                                    Monticello, New York 12701
                                    baumlawoffices@verizon.net
                                    (845) 791-1000

To:   GIBSON, DUNN & CRUTCHER, LLP
      Mitchell A. Karlan, Esq.
      *Attorneys for Defendant*
      200 Park Avenue
      New York, New York 10166-0193
      Telephone: (212) 351-4000
      Facsimile: (212) 351-4035
      mkarlan@gibsondunn.com

United States District Court
for the
Southern District of New York

| | | |
|---|---|---|
| FRANK OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No: 7:13-cv-5948 (VB) |
| | ) | |
| TEXTRON FINANCIAL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

Morton I. Baum, a member of the firm Baum Law Offices, LLP, attorneys for Plaintiff

Frank Owens hereby certifies that he has served a copy of the within AMENDED COMPLAINT

dated October 18, 2013 with Demand For Jury Trial on:

> GIBSON, DUNN & CRUTCHER, LLP
> Mitchell A. Karlan, Esq.
> *Attorneys for Defendant*
> 200 Park Avenue
> New York, New York 10166-0193
> mkarlan@gibsondunn.com

by e-mail on October 18, 2013.

> BAUM LAW OFFICES, LLP
>
> By:   Morton I. Baum, Esq. (MB 1674)
> *Attorneys for Plaintiff*
> 428 Broadway
> P.O. Box 1260
> Monticello, New York 12701
> baumlawoffices@verizon.net
> (845) 791-1000

1

To:    GIBSON, DUNN & CRUTCHER, LLP
        Mitchell A. Karlan, Esq.
        *Attorneys for Defendant*
        200 Park Avenue
        New York, New York 10166-0193
        Telephone: (212) 351-4000
        Facsimile: (212) 351-4035
        mkarlan@gibsondunn.com