```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
FRANK OWENS,                                   :
                Plaintiff,                     :
                                               :           MEMORANDUM DECISION
v.                                             :
                                               :           13 CV 5948 (VB)
TEXTRON FINANCIAL CORPORATION,                 :
                Defendant.                     :
--------------------------------------------------------------x
```

Briccetti, J.:

  Plaintiff Frank Owens brings this action arising out of his $2 million investment in a real estate investment fund, which plaintiff claims was operated as a Ponzi scheme. Neither the fund nor the fund's manager is named as a defendant. Instead, plaintiff seeks recovery from defendant Textron Financial Corporation, a lender that extended a line of credit to the investment fund pursuant to a loan agreement.

  Defendant moves to dismiss the amended complaint under Rule 12(b)(6). (Doc. #17). For the following reasons, the motion is GRANTED.

  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

  In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in favor of plaintiff.

  Plaintiff alleges he invested $2 million in Gaffken & Barriger Fund, LLC (the "Fund"). The Fund was in the business of "holding primarily real estate collateralized commercial mortgage loans, other mortgages, real estate related and non-real estate assets, and making loans at high interest rates to high risk borrowers," and "raised capital for its operation through sales of

1

securities to public investors and private borrowing." (Am. Compl. ¶¶ 21-22). It was managed by its President and CEO, Lloyd V. Barriger.

Plaintiff alleges defendant is "a highly sophisticated money lender skilled in the business of making high interest loans to high risk borrowers." (Id. ¶ 5). Defendant and the Fund entered into a Loan and Security Agreement in January 2006, pursuant to which defendant extended certain "Revolving Loan Advances" to the Fund. (See Doc. #19-4).[1] Under the Agreement, defendant acquired a perfected first-priority lien on all of the Fund's assets. (See id.).

The Agreement also provided defendant the right to review the Fund's financial records—and defendant allegedly did so, "from time to time . . . thereby becoming fully familiar with [the Fund's] financial condition" and its practice of "making payments to existing investors from funds obtained from new investors." (Am. Compl. ¶¶ 23, 30).

On April 18, 2007, defendant notified the Fund that the Fund was in default under the Agreement. Plaintiff alleges defendant therefore knew the Fund was insolvent as of that date.

On September 27, 2007—the same day plaintiff invested $2 million in the Fund—the Fund allegedly "immediately wired" that money, which was to be applied towards the Fund's outstanding debt, to defendant. (See id. ¶ 44).

Plaintiff alleges Barriger was indicted by a federal grand jury in May 2011 "[w]ith regard to crimes alleged" in the amended complaint. (Id. ¶ 48). On July 26, 2013, Barriger pleaded

---

[1] The Court considers the entire Loan and Security Agreement, which is quoted extensively in the amended complaint, as incorporated by reference therein. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also Allen v. Chanel Inc., 2013 WL 2413068, at *5 (S.D.N.Y. June 4, 2013) ("Multiple references to, and lengthy quotations from, an outside document have been considered sufficiently substantial to incorporate the document into the complaint by reference.").

guilty to conspiracy, securities fraud, and mail fraud, and on February 27, 2014, was sentenced principally to 66 months' imprisonment.[2]

Plaintiff commenced this action to recover his investment from defendant, the alleged "beneficiary and recipient of the proceeds" of Barriger's crimes. (Id. ¶ 9). Plaintiff contends that because defendant had a right to review the Fund's financial records—and allegedly did so—defendant "knew or should have known [the Fund] was a criminal enterprise engaged in the operation of a Ponzi Scheme." (Id. ¶¶ 30-31). Plaintiff further alleges defendant chose not to "declare a default[,] which would have had the effect of closing down the [Fund's] operations," so that the Fund would continue its activities and "fraudulently induce innocent third parties to lend, invest, and give it money." (Id. ¶ 41). Thus, plaintiff alleges, defendant aided and abetted the Fund's criminal activities.

The amended complaint does not identify specific claims. In its moving papers, defendant suggests plaintiff "may be" asserting claims for fraudulent conveyance, unjust enrichment, and aiding and abetting fraud, and urges the Court to dismiss those claims.

In opposition, plaintiff rejects defendant's reading and disclaims reliance on the legal theories defendant suggests. Plaintiff does not identify any claims in its brief, but asserts "[t]he law applicable is the New York law concerning tracing proceeds of a crime from the perpetrator of the crime to a third party receiving those proceeds," and urges "[o]ur paradigm involves a transfer which improves the equity of the transferee, improves the equity of the transferor, improves the net worth of the transferor which becomes available for creditors or judgment

---

[2] The Court takes judicial notice of the docket sheet in United States v. Barriger, 11 CR 416 (S.D.N.Y.). See Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (holding "docket sheets are public records of which the [district] court could take judicial notice").

creditors, and negatively impacts Frank Owens who is the only loser as a crime victim and creditor." (Doc. #20, pp. 8, 14).

## DISCUSSION

I.   Legal Standards

   A.   Rule 8

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  The statement should be plain "so as to enable [the adverse party] to answer and prepare for trial." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).

   B.   Rule 9(b)

Under Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  "However, because courts 'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'" In re Agape Litig., 681 F. Supp. 2d 352, 361 (E.D.N.Y. 2010) (quoting Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995)).  A strong inference of fraudulent intent may be established either by facts showing that defendant had both motive and opportunity to commit fraud, or facts constituting strong circumstantial evidence of conscious misbehavior or recklessness.  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004).

C.     Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the amended complaint under the "two-pronged approach" outlined by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the amended complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. at 564.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

II.    Motion to Dismiss

Defendant urges the amended complaint (i) fails to provide it with fair notice of the claims against it, (ii) fails to meet the heightened pleading standards of Rule 9(b) with respect to claims premised on alleged fraudulent conduct, and (iii) fails plausibly to plead any claims for relief.

The Court agrees.

First, the amended complaint does not explicitly identify any legal claims. In his opposition brief, plaintiff rejects the claims defendant suggests he might be pleading, but fails to clarify what claims he is pleading. Plaintiff makes a vague reference to "the New York law" concerning the tracing of proceeds of crime and discusses a so-called "paradigm" of "a transfer which improves the equity of the transferee, improves the equity of the transferor, improves the net worth of the transferor which becomes available for creditors or judgment creditors, and negatively impacts [plaintiff]." (Doc. #20, pp. 8, 14). These statements provide little insight, however, into what particular claim(s) plaintiff seeks to assert, or how the underlying facts of this case would otherwise support any claim recognized by law.

Plaintiff has therefore failed to provide defendant fair notice of its claim or claims.

Second, to the extent plaintiff's claim(s) are premised on fraud, plaintiff has not met the heightened pleading standard of Rule 9(b), which requires such claims be pleaded with particularity. Rule 9(b) applies not only to claims such as RICO claims and claims for common law fraud, "but also to elements of other claims that are premised on fraud." Daly v. Castro Llanes, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) (citing O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991)).

Here, plaintiff's central theory of defendant's alleged wrongdoing appears to be that defendant knew or should have known about the Fund's fraudulent scheme and nevertheless induced or encouraged the scheme by failing to "declare a default," which would have had the effect of shutting down the Fund. But plaintiff has not pleaded facts supporting this theory with any particularity. See, e.g., Rosner v. Bank of China, 2008 WL 5416380, at *6 (S.D.N.Y. Dec. 18, 2008), aff'd, 349 F. App'x 637 (2d Cir. 2009) ("[A] plaintiff does not satisfy Rule 9(b) by

alleging a bank's actual knowledge of a fraud based on allegations of the bank's suspicions or ignorance of obvious 'red flags' or warning signs indicating the fraud's existence.").

In any event, plaintiff has not plausibly pleaded any claim for relief.  To plausibly plead a claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" is not sufficient. Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717 (2d Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

Plaintiff's conclusory allegations of defendant's "knowledge" of the fraudulent scheme—based on defendant's right to review, and alleged review of, the Fund's records—are not entitled to the assumption of truth.  See Ashcroft v. Iqbal, 556 U.S. at 679.  Moreover, because plaintiff has not identified any cognizable legal theory applicable here, the Court cannot reasonably infer defendant is liable under any such theory.  See Mallgren v. Microsoft Corp., 975 F. Supp. 2d 451, 457 (S.D.N.Y. 2013) ("Because it is impossible for the Court to draw any reasonable inference that Defendants are liable for any of the conduct alleged, the claims against them must be dismissed.").

In opposition, plaintiff argues: (i) he was a victim of a crime, (ii) property acquired fraudulently or through criminal activity "does not pass with title," (iii) title to his money thus never vested in the Fund and, therefore, (iv) his money was not subject to defendant's lien on the Fund's assets.  Plaintiff concludes he is thus entitled to recover his investment on the basis of "New York public policy."

This argument is unavailing, because plaintiff provides no support for the notion that the alleged public policy constitutes an independent cause of action under New York law.

Moreover, the principal case plaintiff relies on for this proposition, Stephens v. Bd. of Educ. of Brooklyn, 79 N.Y. 183 (1879), actually undermines his position. In Stephens, the Court of Appeals recognized a well-established rule that "money obtained by fraud or felony cannot be followed by the true owner into the hands of one who has received it bona fide and for a valuable consideration in due course of business." Id. at 186. Plaintiff has not plausibly pleaded defendant acquired his $2 million otherwise.[3]

For these reasons, defendant's motion to dismiss the amended complaint is granted.

III.   Leave to Replead

In his opposition brief, plaintiff informally requests further leave to replead.

When defendant first filed its motion to dismiss, the Court sua sponte granted plaintiff leave to file an amended complaint, and plaintiff did so. Plaintiff having failed to correct the complaint's pleading deficiencies when given the opportunity to do so, the Court sees no reason to give plaintiff yet another chance to replead.

Moreover, plaintiff has not submitted a proposed second amended complaint. Under Rule 15(a)(2), a party may amend its complaint only with the opposing party's written consent or leave of court. Although leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, . . . or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

---

[3]   Plaintiff also provides no authority, and the Court is aware of none, supporting the proposition that the United States Bankruptcy Code—or bankruptcy-related caselaw—have any application to this non-bankruptcy case. (Specifically, plaintiff cites 11 U.S.C. § 547 and cases interpreting the bankruptcy code.)

Because plaintiff has not submitted a proposed second amended complaint, plaintiff has not demonstrated amendment would not be futile.  See, e.g., Acito v. IMCERA Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995) (affirming denial of leave to amend when district court "examined plaintiffs' supplementary allegations and determined that the additional information did not cure the complaint"); In re Cybershop.com Sec. Litig., 189 F. Supp. 2d 214, 236 (D.N.J. 2002) (denying leave to amend when plaintiff "failed to proffer any proposed, substantive amendment that would satisfy applicable pleading requirements; indeed, it [did] not suggest any amendment at all").

Accordingly, plaintiff's request for leave to replead is denied.

## CONCLUSION

Defendant's motion to dismiss the amended complaint is GRANTED.

Plaintiff's request for further leave to replead is DENIED.

The Clerk is instructed to terminate the pending motion (Doc. #17) and close this case.

Dated: July 14, 2014
White Plains, NY

SO ORDERED:

*/s/ Vincent L. Briccetti*

Vincent L. Briccetti
United States District Judge